[Cite as *State v. Cruz*, 2011-Ohio-2088.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | | |

STATE OF OHIO

    Appellee

    v.

ANGEL M. CRUZ

    Appellant

C.A. No.     10CA009774

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    09CR079310

DECISION AND JOURNAL ENTRY

Dated: May 2, 2011

DICKINSON, Judge.

## INTRODUCTION

**{¶1}** A group of men broke into Benjamin and Jessica Lynn's house one evening while Mrs. Lynn and the Lynns' four-year-old daughter were asleep. They beat up Mrs. Lynn and stole many of the Lynns' possessions, but left when Mr. Lynn got home. Police found Pedro Vera's fingerprints in the house, and he identified Angel Cruz as one of his accomplices. A jury convicted Mr. Cruz of kidnapping, aggravated burglary, and theft, and the trial court sentenced him to 19 years in prison. Mr. Cruz has appealed, arguing that the trial court incorrectly allowed a detective to testify about what Mr. Vera had said to him and that his trial lawyer was ineffective. We affirm because any error regarding what Mr. Vera told the detective was invited by Mr. Cruz, and he has not demonstrated that there is a reasonable probability that, but for his lawyer's allegedly deficient performance, the result of his trial would have been different.

## BACKGROUND

{¶2} On the evening of August 12, 2009, Mrs. Lynn was at home with her daughter and Mr. Lynn was out playing poker. After Mrs. Lynn put her daughter to bed, she did some chores and fell asleep on the couch while watching television. Around 11:30 p.m., she was awakened by a crash and saw a man standing in the living room with her. She initially thought that it was her husband, but then the man threw her down on the floor, pinned her down, and told her not to scream.

{¶3} Mrs. Lynn testified that, as she was lying on the floor, she saw two other men walk by. The man who was holding her down had a handgun and was wearing a hat and a bandana that covered most of his face. Another man had a shotgun and was wearing a rag that covered most of his face. The third man was unarmed and was wearing a hooded sweatshirt. The hood was up and pulled tight around his face, preventing her from seeing his hair, but allowing her to see his entire face.

{¶4} According to Mrs. Lynn, while the man with the handgun held her, the other men went through the house taking things. She testified that, when she struggled, the men with the guns beat her. When her daughter woke up, however, she pulled free and ran to get her.

{¶5} Mr. Lynn got home about an hour after the burglary began. He testified that he was alerted to the fact that something was wrong because all the lights were on in the house and there was a man with a mask looking out the living room window. According to Mr. Lynn, he grabbed a large stick that he had in his car and began shouting at the intruders, demanding to know what they had done to his family. The men exited the house and came at him from different sides, causing him to run to a neighbor's house. Instead of pursuing him, the men used a couple of his collectable baseball bats to smash his car's headlights and left.

{¶6} The police found three fingerprints inside the Lynns' house, each of which was Mr. Vera's. Mrs. Lynn identified Mr. Vera from a photo array as the man who had the handgun. Detective Anthony Kovacs testified that he spoke to Mr. Vera, who led him to suspect that Mr. Cruz was involved in the burglary. He assembled a photo array with Mr. Cruz's picture, and Mrs. Lynn identified Mr. Cruz as the man who was wearing the hooded sweatshirt. Based on her identification, the Grand Jury indicted Mr. Cruz for kidnapping, aggravated burglary, and theft. Mr. Cruz has assigned two errors on appeal.

## INVITED ERROR

{¶7} Mr. Cruz's first assignment of error is that the trial court incorrectly allowed Detective Kovacs to testify about what Mr. Vera told him during his interrogation. He has argued that Mr. Vera's alleged statements were hearsay and that their admission violated his right to confront his accusers.

{¶8} On cross-examination, Mr. Cruz's lawyer asked Detective Kovacs what Mr. Vera told him when he asked Mr. Vera to identify his accomplices. The detective answered that Mr. Vera gave him three names, which were Angel Ramirez, Geovanie Ramirez, and "Red." On redirect, Detective Kovacs testified that Mr. Vera confirmed that "Red" was Angel Cruz.

{¶9} Because it was Mr. Cruz who asked the detective to repeat what Mr. Vera had told him, his hearsay and confrontation clause arguments are without merit. "Under the invited-error doctrine, a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." *State ex rel. Bitter v. Missig*, 72 Ohio St. 3d 249, 254 (1995). Mr. Cruz's first assignment of error is overruled.

INEFFECTIVE ASSISTANCE

**{¶10}** Mr. Cruz's second assignment of error is that his trial lawyer was ineffective. To establish that his lawyer was ineffective, Mr. Cruz "must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 119 Ohio St. 3d 118, 2008-Ohio-3426, at ¶204 (citing *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984); *State v. Bradley*, 42 Ohio St. 3d 136, paragraph two of the syllabus (1989)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691.

**{¶11}** Mr. Cruz has argued that his lawyer was ineffective because he elicited hearsay testimony from Detective Kovacs that implicated him in the burglary. He has also argued that his lawyer constructively waived his right to confront his accuser and bolstered the testimony of Mrs. Lynn.

**{¶12}** We will begin with the prejudice prong because it is dispositive. Mrs. Lynn testified that one of the men involved in the burglary was wearing a "white zipped-up hoodie." She testified that, because the man had the "hood up and pulled tight . . . I never saw any hair, no ears, I saw just [the] . . . face. But he did not have a mask on." According to Mrs. Lynn, when she saw the photo array with Mr. Cruz's picture, it threw her off at first because she had not seen Mr. Cruz's hair. After she cupped her hands around the faces of the men in the photo array, however, she recognized Mr. Cruz. Mrs. Lynn testified that she was sure that Mr. Cruz was one

of the people involved in the burglary, explaining that she will never forget what his face looks like.

{¶13} Ileana Ramirez testified that she is the sister of Alex Ramirez, one of the other men who was involved in the burglary. She said that she knows Mr. Cruz, but only by his nickname "Colorao" or "Red." She testified that, some time after the burglary, she was driving in a car with her brother, Mr. Cruz, and others when she overheard them talking about a robbery that they had done together. According to Ms. Ramirez, the robbery that they were talking about occurred around the beginning or middle of August 2009.

{¶14} On direct examination, Detective Kovacs testified that he talked to Mr. Vera after the burglary and that their conversation led him to suspect that Mr. Cruz had been involved in it. On cross-examination, Mr. Cruz's lawyer asked Detective Kovacs more about what Mr. Vera had told him, including the names of the three other men Mr. Vera claimed were involved. Mr. Vera answered "Angel Ramirez, Geovanie Ramirez, and Red."

{¶15} By the time Mr. Cruz's lawyer asked Detective Kovacs for the names of the other men that Mr. Vera said were involved in the burglary, Mrs. Lynn had identified Mr. Cruz as one of the men who invaded her house and Ms. Ramirez had confirmed that Mr. Cruz admitted to having participated in a robbery around the same time as the burglary at the Lynns' house. Detective Kovacs had also testified that his conversation with Mr. Vera had led him to suspect that Mr. Cruz was involved in the burglary. Accordingly, we do not believe that it is reasonably probable that Mr. Cruz's lawyer's question about the names of the men that Mr. Vera claimed were involved in the burglary affected the outcome of Mr. Cruz's trial. If anything, the lawyer's question appears to have been aimed at undermining the evidence against Mr. Cruz. In particular, the lawyer pointed out that Mr. Vera told the detective that there were four men

involved in the burglary while Mr. and Mrs. Lynn each testified that there were only three men. Mr. Cruz's lawyer emphasized this discrepancy during his closing argument.

{¶16} Mr. Cruz has also argued that his lawyer should have objected to hearsay testimony of Detective Kovacs that implicated him as one of Mr. Vera's accomplices. Citing *Neighbours v. State*, 121 Ohio St. 525 (1930), Mr. Cruz has argued that the prosecutor improperly asked Detective Kovacs whether his conversation with Mr. Vera led him to any other suspects. The prosecutor asked: "Without telling us what Pedro Vera said to you, as a result of your conversation with Pedro Vera, were you led to any other suspects that were involved in the burglary of the Lynn home[?]" The detective answered "[y]es" and subsequently answered that the other suspect was Mr. Cruz.

{¶17} In *Neighbours*, the trial court allowed the prosecution to ask a police officer about a letter that a brother of the defendant had written in which the brother confessed to the crime and implicated the defendant. It also allowed the prosecution to submit a letter that a different brother had written to the defendant, in which that brother urged the defendant to turn himself in. The Ohio Supreme Court held that the testimony and letters were inadmissible and were so prejudicial that they denied the defendant of a fair trial. *Neighbours v. State*, 121 Ohio St. 525, 532 (1930).

{¶18} "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid. R. 801(C). Rule 801(A) of the Ohio Rules of Evidence defines "statement" as "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." Under Rule 802, "[h]earsay is not admissible except as otherwise provided by . . . these rules . . . ."

{¶19} The prosecutor's exchange with Detective Kovacs does not fall under the hearsay rule because it does not involve an assertion by Mr. Vera that could be proved true or false. *State v. Carter*, 72 Ohio St. 3d 545, 549 (1995). "An 'assertion' for hearsay purposes 'simply means *to say that something is so, e.g.*, that an event happened or that a condition existed.'" *Id.* (quoting 2 McCormick on Evidence 98, § 246 (4th Ed. 1992)); see also *State v. Stiles*, 3d Dist. No. 1-08-12, 2009-Ohio-89, at ¶38 (rejecting argument that witness's answers were the "functional equivalent" of hearsay even though they did not implicate hearsay rules). The prosecutor's exchange with Detective Kovacs did not involve any declarations or affirmations allegedly made by Mr. Vera. For the same reason, the exchange did not violate Mr. Cruz's confrontation rights. *Crawford v. Washington*, 541 U.S. 36, 51 (2004) (holding that the Confrontation Clause "applies to 'witnesses' . . . who 'bear testimony[,]'" and that "[t]estimony," . . . is typically "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.") (quoting N. Webster, *An American Dictionary of the English Language* (2d ed. 1828)). Furthermore, this case is distinguishable from *Neighbours*, which involved the introduction of the defendant's brothers' actual written statements. *Neighbours v. State*, 121 Ohio St. 525, 527-29 (1930).

{¶20} Mr. Cruz has next argued that his lawyer was ineffective for not objecting to Ms. Ramirez's testimony that she had overhead him say that he had done a "lick," which means "to rob somebody." He has argued that, because Ms. Ramirez was not a party to the conversation, her interpretation of the term "lick" was speculative.

{¶21} Mr. Cruz has not cited any authority to support his argument that Ms. Ramirez should not have been allowed to testify to her understanding of the term "lick." This Court has located a number of other cases in which the term "lick" was defined as a robbery. See *State v.*

*Perez*, 124 Ohio St. 3d 122, 2009-Ohio-6179, at ¶42; *State v. Yarbrough*, 104 Ohio St. 3d 1, 2004-Ohio-6087, at ¶15; *State v. Smith*, 89 Ohio St. 3d 323, 324 (2000); *State v. Alston*, 9th Dist. No. 05CA008769, 2006-Ohio-4152, at ¶34. We, therefore, conclude that Mr. Cruz's lawyer's performance was not deficient for failing to object to Ms. Ramirez's explanation of that term.

{¶22} Mr. Cruz has next argued that his lawyer should have attempted to mitigate the damage caused by Detective Kovacs's alleged hearsay testimony and Ms. Ramirez's speculative definition by asking the court to strike their answers at the close of the State's case. If a party fails to object to a question at the time it is asked, the party typically forfeits all but plain error with respect to that question. *State v. Gaiter*, 9th Dist No. 24758, 2010-Ohio-2205, at ¶18 (citing *State v. McDonald*, 25 Ohio App. 2d 6, 11 (1970)); *State v. Long*, 53 Ohio St. 2d 91, paragraph three of the syllabus (1978) ("Notice of plain error . . . is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."). Accordingly, Mr. Cruz has not demonstrated that it is reasonably probable that the outcome of his trial would have been different if his lawyer had made a belated objection to the allegedly improper testimony.

{¶23} Mr. Cruz's final ineffective assistance argument is that his trial lawyer should have moved to suppress Mrs. Lynn's photo lineup identification. He has argued that the lineup was so impermissibly suggestive that there was a substantial likelihood of irreparable misidentification.

{¶24} The United States Supreme Court has written that "convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

*Simmons v. United States*, 390 U.S. 377, 384 (1968). This Court has reviewed the record and has not identified any evidence suggesting that the photographic lineup that Mrs. Lynn saw was impermissibly suggestive. Rather, Mr. Cruz's argument appears to depend on evidence outside the record, that is, the evidence that would have been presented at the motion to suppress hearing. This Court has held that "a direct appeal is not the appropriate context to present evidence outside the record." *State v. Souris*, 9th Dist. No. 24513, 2010-Ohio-423, at ¶15 (quoting *State v. Mitchell*, 9th Dist. No. 24730, 2009-Ohio-6950, at ¶ 20); *State v. Kovacek*, 9th Dist. No. 00CA007713, 2001 WL 577664 at *5 (May 30, 2001). Mr. Cruz's argument is more appropriately made in a petition for postconviction relief because there he could present additional evidence to show that the photographic lineup was impermissibly suggestive. *Souris*, 2010-Ohio-423, at ¶15.

{¶25} Mr. Cruz has failed to demonstrate that his lawyer's performance was defective and that there is a reasonable probability that, but for his lawyer's errors, the result of his trial would have been different. His second assignment of error is overruled.

CONCLUSION

{¶26} Although Mr. Cruz invited Mr. Vera's hearsay statements about the names of his accomplices, Mr. Cruz has not established that there is a reasonable probability that, but for his lawyer's alleged deficiency, the result of his trial would have been different. The judgment of the Lorain County Common Pleas Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CLAIR E. DICKINSON
FOR THE COURT

CARR, J.
CONCURS

BELFANCE, P. J.
CONCURS IN JUDGMENT ONLY, SAYING:

{¶27} I concur in the judgment. I write separately to note that just because the prosecutor's questioning of Detective Kovacs concerning events that flowed from his conversation with Mr. Vera did not fit neatly into the legal definition of hearsay, it does not necessarily follow that the State's questioning was proper. Nonetheless, given the way Mr. Cruz framed his argument on appeal, and the fact that Mr. Cruz has not demonstrated that his trial counsel's failure to object affected the outcome of the trial, his argument is properly overruled. See *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, at ¶¶95, 105.

APPEARANCES:

SHIMANE K. SMITH, Attorney at Law, for Appellant.

DENNIS WILL, Prosecuting Attorney, and BILLIE JO BELCHER, Assistant Prosecuting Attorney, for Appellee.