[Cite as *State v. Davis*, 2012-Ohio-788.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| STATE OF OHIO | | C.A. No. 25680 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| EDWARD J. DAVIS | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR 08 05 1670(B) |

DECISION AND JOURNAL ENTRY

Dated: February 29, 2012

DICKINSON, Judge.

INTRODUCTION

{¶1} A couple of men wearing dark clothing allegedly shot at Officer Vince Tersigni then fled through a residential neighborhood. A short time later, Officer Eric Wagner stopped Edward Davis on a nearby street because he was wearing dark clothing and was approaching from the direction that the gunmen had fled. Officers subsequently found guns, gloves, hats, and masks along his suspected flight path. The Grand Jury indicted Mr. Davis for attempted aggravated murder, felonious assault, tampering with evidence, carrying concealed weapons, and having weapons under disability. Mr. Davis waived his right to a jury trial and proceeded to a bench trial with his co-defendant, Rydell Brooks. At the close of the prosecution's case, the trial judge dismissed the carrying a concealed weapon count. At the end of the trial, he found Mr. Davis guilty of tampering with evidence and having a weapon under disability and sentenced him to four years in prison. Mr. Davis has appealed his convictions, arguing that his trial lawyer

was ineffective for not filing a motion to suppress, that the trial court incorrectly admitted the journal entry for his prior conviction, that his convictions were not supported by sufficient evidence, and that his convictions are against the manifest weight of the evidence. We affirm because Mr. Davis's ineffective assistance claim is premature, the trial court correctly admitted the journal entry, there was sufficient evidence to support his convictions, and his convictions are not against the manifest weight of the evidence.

FACTS

{¶2}  According to Officer Tersigni, around midnight on May 18, 2008, he was sitting in the passenger seat of a patrol car while the car was stopped at an intersection, when his partner, Officer Nate Milstead, and he smelled the odor of marijuana coming from a minivan that drove past them heading south. Officer Milstead turned their car around in the intersection and began following the minivan, which made a right-hand turn into the driveway of an abandoned house on the west side of the street. They continued past the house, and Officer Tersigni, thinking that the minivan would back out after they drove past, asked Officer Milstead to let him out at the next house. Officer Tersigni testified that, after getting out of the patrol car, he approached the front of the abandoned house from the southeast, listening for sounds from the minivan, which had stopped in the driveway on the north side of the house. He heard doors opening and closing and a voice say "[h]urry up. They are leaving." Suddenly, he noticed a man at the southwest corner of the house and heard the man say "[o]h, shit." The man ran back behind the house toward the minivan, so Officer Tersigni began running along the front of the house, parallel to him.

{¶3}  Officer Tersigni testified that, as he turned the northeast corner of the house, he saw two men standing by the minivan, then saw a muzzle flash and heard a gunshot. Based on

the small diameter of the flash, he determined that the gun was pointed in his direction. One of the individuals who had been standing by the minivan began running south behind the house, so Officer Tersigni turned around and ran back along the front of the house to the south end. When he came around the corner, he saw two or three more muzzle flashes, so he decided to run across the street to take cover behind a tree and call for assistance.

{¶4} Officer Milstead testified that, after he dropped Officer Tersigni off, he circled around the block, anticipating that he would be able to stop the minivan when he came back around. As he was going around the block, he heard gunshots, so he drove back to the abandoned house as fast as he could. After asking Officer Tersigni what had happened, Officer Milstead got out of the patrol car and began pursuing the individuals who had been in the minivan southwest through the backyards of the other homes along the street.

{¶5} Officer Wagner testified that he heard Officer Tersigni request assistance and drove to the intersection that was closest to the southwest corner of the abandoned house because that was the direction that the individuals appeared to be fleeing. He had gotten out of his cruiser and begun walking up the street, when he saw two men wearing dark clothing walking toward him from the direction of the abandoned house. He pulled his gun and told the men to lie down, which they did. After handcuffing the men, Officer Wagner learned that they were Mr. Davis and Mr. Brooks.

{¶6} Officers did not apprehend any other suspects in the vicinity of the abandoned house, but they did find several guns, hats, masks, and gloves between the abandoned house and the place where Officer Wagner stopped Mr. Brooks and Mr. Davis. DNA from some of the items was consistent with Mr. Brooks's DNA, and DNA from one of the gloves was consistent with Mr. Davis's DNA. Mr. Davis also had gunshot residue on his hands.

{¶7} Mr. Brooks testified that he had been feuding with a group of men from another part of the city and that he, Mr. Davis, and three other friends had decided to go to a club that night to try to resolve the conflict with the uncle of one of the men from the other group. The guns, gloves, and masks were precautionary because they were not sure how the meeting would turn out. He said that, when the patrol car started following them and the driver pulled into a driveway, he got out of the van and began looking for a place to hide his two guns. He then heard someone say "[o]h, shit," followed by gunfire, so he fled, hiding the stuff he had been carrying as he made his way through the neighboring backyards. Mr. Brooks said that he did not know where everyone else went, but that he ran into Mr. Davis on the sidewalk of the next street shortly before Officer Wagner stopped them.

## MOTION TO SUPPRESS

{¶8} Mr. Davis's first assignment of error is that his trial lawyer was ineffective because he did not file a motion to suppress. According to Mr. Davis, his lawyer should have argued that Officer Wagner did not have reasonable suspicion to stop him. He has argued that, but for the stop, officers would not have been able to test his hands for gunshot residue.

{¶9} To establish that his lawyer was ineffective, Mr. Davis "must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 119 Ohio St. 3d 118, 2008-Ohio-3426, at ¶204 (citing *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984); *State v. Bradley*, 42 Ohio St. 3d 136, paragraph two of the syllabus (1989)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691.

{¶10} Because Mr. Davis's lawyer did not move to suppress the gunshot residue tests, we do not know what evidence would have been presented by the parties regarding whether Officer Wagner had reasonable suspicion to conduct an investigatory stop. As we have explained in other cases, "a direct appeal is not the appropriate context to present evidence outside the record." *State v. Souris*, 9th Dist. No. 24513, 2010-Ohio-423, at ¶ 15 (quoting *State v. Mitchell*, 9th Dist. No. 24730, 2009-Ohio-6950, at ¶ 20); *State v. Kovacek*, 9th Dist. No. 00CA007713, 2001 WL 577664 at *5 (May 30, 2001). Because we do not know what credible evidence would have been presented at a suppression hearing, Mr. Davis cannot show that he was prejudiced by his lawyer's decision not to file a motion to suppress. We conclude that Mr. Davis's argument is more appropriately made in a petition for postconviction relief because there he could present a complete record regarding whether Officer Wagner had reasonable suspicion to stop him. *See State v. Cruz*, 9th Dist. No. 10CA009774, 2011-Ohio-2088, at ¶ 24; *State v. Spriggs*, 2d Dist. No. 98-CA-19, 1998 WL 879262 at *6 (Dec. 18, 1998) ("[A] petition for post-conviction relief, rather than a direct appeal, is usually the proper method for pursuing an ineffective-assistance claim involving an attorney's failure to file a suppression motion."). Mr. Davis's first assignment of error is overruled.

## PRIOR CONVICTION

{¶11} Mr. Davis's second, third, and fourth assignments of error, which he has argued together, are that the trial court incorrectly admitted the journal entry for his prior conviction for possession of marijuana. According to Mr. Davis, the court should not have admitted the entry

because it does not comply with Rule 32(C) of the Ohio Rules of Criminal Procedure, does not show the crime for which he was convicted, and was inadmissible hearsay.

{¶12} The Grand Jury indicted Mr. Davis for having weapons while under disability in violation of Section 2923.13(A)(3) of the Ohio Revised Code. At the time of the alleged offense, Section 2923.13(A)(3) (2008) provided that "no person shall knowingly acquire, have, carry, or use any firearm . . . if . . . [t]he person . . . has been convicted of any offense involving the illegal possession . . . [of] any drug of abuse . . . ." The issue in this case was whether the documents submitted by the State proved that Mr. Davis had been convicted of a qualifying offense.

{¶13} Regarding Mr. Davis's argument that the journal entry for his prior conviction does not comply with Criminal Rule 32(C), under Section 2945.75(B) of the Ohio Revised Code, "[w]henever in any case it is necessary to prove a prior conviction, a certified copy of the entry of judgment in such prior conviction together with evidence sufficient to identify the defendant named in the entry as the offender in the case at bar, is sufficient to prove such prior conviction." In *State v. Henderson*, 58 Ohio St. 2d 171 (1979), the Ohio Supreme Court held that, for a journal entry to prove a prior conviction for a theft offense under Section 2945.75(B), the journal entry must satisfy Rule 32(C) of the Ohio Rules of Criminal Procedure. *Id*. at paragraph two of the syllabus, 177-79.

{¶14} Under Criminal Rule 32(C), "[a] judgment of conviction shall set forth the plea, the verdict, or findings, upon which each conviction is based, and the sentence." In *State v. Baker*, 119 Ohio St. 3d 197, 2008-Ohio-3330, the Ohio Supreme Court explained that, for a journal entry to comply with Rule 32(C), it must contain "(1) the guilty plea, the jury verdict, or the finding of the court upon which the conviction is based; (2) the sentence; (3) the signature of the judge; and (4) entry on the journal by the clerk of court." *Id*. at ¶ 18.

{¶15} Assuming, under *Henderson*, that the journal entry that the State submitted had to satisfy Criminal Rule 32(C) to prove that Mr. Davis had a prior conviction for possession of marijuana, we note that it indicated (1) that Mr. Davis had been found guilty by the trial judge after pleading no contest and (2) that his fine was $150. It (3) contained the signature of the judge and (4) contained a time stamp, indicating that it would be entered on the journal by the clerk of courts. We, therefore, conclude that the journal entry satisfied Criminal Rule 32(C).

{¶16} Mr. Davis has also argued that the journal entry was defective because it did not identify the crime for which he was found guilty. If a case has only one count, however, the trial court's journal entry does not have to identify the crime by name or the code section violated. *State v. Dowhan*, 11th Dist. No. 2008-L-064, 2009-Ohio-684, at ¶ 16; *State v. Constable*, 4th Dist. No. 08CA1, 2008-Ohio-4341, at ¶ 9-11. Accordingly, Mr. Davis's argument is without merit.

{¶17} Mr. Davis has further argued that the journal entry was inadmissible because it was hearsay and does not fall within the exception for "[j]udgment of previous convictions" under Rule 803(22) of the Ohio Rules of Evidence. This Court recently considered and rejected this same argument, concluding that certified municipal court documents that are self-authenticating under Evidence Rule 902(4) are admissible under the public records exception to the hearsay rule. *State v. Gwen*, 9th Dist. No. 25218, 2011-Ohio-1512, at ¶ 42 (citing Evid. R. 803(8)(a)).

{¶18} The trial court correctly admitted the municipal court journal entry that established that Mr. Davis had a previous conviction for possession of marijuana. Mr. Davis's second, third, and fourth assignments of error are overruled.

SUFFICIENCY

{¶19} Mr. Davis's sixth assignment of error is that the trial court incorrectly denied his motion for judgment of acquittal. Under Rule 29(A) of the Ohio Rules of Criminal Procedure, a defendant is entitled to a judgment of acquittal on a charge against him "if the evidence is insufficient to sustain a conviction . . . ." Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo. *State v. Thompkins*, 78 Ohio St. 3d 380, 386 (1997); *State v. West*, 9th Dist. No. 04CA008554, 2005-Ohio-990, at ¶ 33. We must determine whether, viewing the evidence in a light most favorable to the prosecution, it could have convinced the average finder of fact of Mr. Davis's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, paragraph two of the syllabus (1991).

{¶20} Regarding Mr. Davis's conviction for having weapons while under disability, Mr. Davis told a polygraph examiner that he had a gun while riding in the minivan. He also had gunshot residue on his hands at the time he was arrested. Furthermore, the municipal court journal entry was sufficient to show that he had previously been convicted of possessing a drug of abuse. R.C. 2945.75(B).

{¶21} Regarding Mr. Davis's conviction for tampering with evidence, under Section 2921.12(A)(1) of the Ohio Revised Code, "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall . . . [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]" According to the polygraph examiner, Mr. Davis said that the gun he had on the night of the shooting was a black nine millimeter. Lieutenant Thomas Wykoff testified that he met other officers at the place where Officer Wagner stopped Mr. Davis and Mr. Brooks and walked from that place back to the

abandoned house, looking for anything that might have been dropped. In the center of some plastic culvert pipes, he found three guns, two nine millimeters and a .380. Mr. Brooks testified that the .380 and one of the nine millimeters were the two guns he had that evening. The other nine millimeter, which was black, matched the description that Mr. Davis gave the polygraph examiner of the gun that he had had. We, therefore, conclude that there was sufficient circumstantial evidence from which the trial judge could conclude that Mr. Davis and Mr. Brooks fled from the abandoned house together and jointly concealed their guns in the pipes before being stopped by Officer Wagner. Mr. Davis's sixth assignment of error is overruled.

## MANIFEST WEIGHT

{¶22} Mr. Davis's fifth assignment of error is that his convictions are against the manifest weight of the evidence. If a defendant argues that his convictions are against the manifest weight of the evidence, this Court "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction[s] must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App. 3d 339, 340 (1986).

{¶23} Regarding his conviction for having weapons under disability, Mr. Davis has argued that he was not under a disability on May 18, 2008. We have reviewed the record and conclude that the trial judge did not lose his way when he determined that Mr. Davis had a prior conviction for possession of marijuana and that, because of the conviction, he was not allowed to possess a gun on May 18, 2008.

{¶24} Regarding his conviction for tampering with evidence, Mr. Davis has argued that, if he was responsible for disposing of the guns and clothing that officers found between the

abandoned house and the place where he was stopped by Officer Wagner, his DNA would have been on more of the items. We note that the item that had DNA that was consistent with Mr. Davis's DNA profile, however, was a glove. It was logical for the trial judge to infer that the reason Mr. Davis's DNA was only on one of the gloves was because he wore gloves while helping Mr. Brooks conceal the guns and various clothing items and waited to dispose of the gloves last. We also note that, although Mr. Brooks testified that he was alone when he hid his guns, it would have been reasonable for the trial judge to find his testimony on that issue not credible considering that police found a third gun, which Mr. Brooks denied possessing, in the same location as Mr. Brooks's guns and Mr. Davis and Mr. Brooks were together when Officer Wagner stopped them.

{¶25} Mr. Davis has also argued that it is possible that the dropped items came from the three other men in the minivan that the officers did not apprehend. If that were the case, however, it would still fail to explain what happened to the gun that Mr. Davis admitted that he had in the minivan but did not have at the time he was stopped.

{¶26} Mr. Davis's convictions for having weapons while under disability and tampering with evidence are not against the manifest weight of the evidence. Mr. Davis's fifth assignment of error is overruled.

CONCLUSION

{¶27} The trial court correctly admitted Mr. Davis's prior conviction, his ineffective assistance of counsel argument is premature, his convictions were supported by sufficient evidence, and his convictions are not against the manifest weight of the evidence. The judgment of the Summit County Common Pleas Court is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CLAIR E. DICKINSON
FOR THE COURT

MOORE, P.J.
CARR, J.
CONCUR

APPEARANCES:

SHUBHRA N. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.