[Cite as *In re R.P.*, 2013-Ohio-5728.]

STATE OF OHIO        )              IN THE COURT OF APPEALS
                        )ss:        NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT    )

IN RE: R.P.                        C.A. No.     26836

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DN 12-11-745

DECISION AND JOURNAL ENTRY

Dated: December 26, 2013

MOORE, Presiding Judge.

**{¶1}** Appellant, Julian T. ("Father"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that adjudicated his child, R.P., dependent and placed her in the temporary custody of Summit County Children Services ("CSB"). This Court affirms.

I.

**{¶2}** R.P. was born on July 11, 2007. While the newborn infant was still in the hospital, Father made a telephone call to CSB, warning that Tiara P. ("Mother") had a drug problem and that it would not be safe to release the infant to Mother's care. Father, who had not yet established paternity, indicated that he might be the biological father of the child. He left his name and telephone number with the receptionist, but asked to remain anonymous.

**{¶3}** Both R.P. and Mother tested positive for cocaine at the time of the birth. Therefore, CSB filed a complaint in juvenile court. The matter proceeded without the presence

of either parent: Mother never appeared and CSB did not attempt to notify Father of the proceedings. The CSB caseworker later testified that she had not received Father's information from the receptionist. Eventually, in December 2007, the juvenile court adjudicated R.P. to be an abused child and placed her in the legal custody of maternal relatives, Donald and Angela Athey, who had previously obtained custody of another of Mother's children. At that time, the child's last name was changed to Athey and her first name was also changed.

{¶4} Father did not initiate any contact with R.P. until nearly four years later, when a CSB employee telephoned him to inquire whether he might be the father of a subsequently born child of Mother. During that telephone conversation, Father learned of the 2007 proceedings regarding R.P. and that the child had been placed in the legal custody of relatives. Father then obtained counsel, established paternity, initiated visits with his daughter, filed a motion to vacate in the trial court, and ultimately, in October 2012, obtained a vacation of the trial court judgment from the court of appeals, based on a lack of personal jurisdiction. *See In re R.P.*, 9th Dist. Summit No. 26271, 2012-Ohio-4799. The Atheys had continued to share parenting of R.P., despite divorcing in September 2012, and Donald Athey leaving the home.

{¶5} On November 30, 2012, the agency filed a new complaint in juvenile court, alleging the dependency of R.P. and seeking temporary custody of the child. CSB initiated a transition plan, including counseling for R.P. and gradually increasing visits with Father. An adjudicatory hearing was held in which the Atheys were permitted to intervene. On January 2, 2013, Angela Athey moved for legal custody.

{¶6} Following hearings, the trial court found that both biological parents had abandoned R.P., R.P. was anxious about a transition, and the process may take some time. Accordingly, the trial court determined that the child's condition warranted the state, in the best

interest of the child, to assume a guardianship and adjudicated the child to be dependent under R.C. 2151.04(C). Upon agreement of the parties, R.P. was placed in the temporary custody of CSB. Father has appealed and has assigned eleven errors for review. Donald and Angela Athey have each filed an appellate brief, urging affirmance of the trial court decision.

II.

## ASSIGNMENT OF ERROR I

THE JUVENILE COURT COMMITTED REVERSIBLE ERROR BY IMPROPERLY ADMITTING INTO EVIDENCE DOCUMENTS NOT MADE AVAILABLE TO FATHER DURING OPEN DISCOVERY.

{¶7} Father asserts that the trial court erred by admitting into evidence records from the 2007 court case and certified records of Mother's misdemeanor convictions. He claims the admission of these records is error because the records were not in CSB's file when Father's counsel participated in open discovery and the prosecutor's office failed to inform counsel of any subsequent additions to the file as requested. Father cites Crim.R. 16 and Juv.R. 24 in support of his position. The trial court overruled the objection and permitted the exhibits to be introduced into evidence.

{¶8} The Sixth District considered a similar question in an appeal from a neglect and dependency adjudication. *In re A.C.*, 6th Dist. Lucas No. L-10-1025, 2010-Ohio-4933. In that case, the parent filed a request for discovery and also requested that the state supplement its original discovery response. The appeals court explained that "the Rules of Juvenile Procedure which control adjudication proceedings in juvenile court differ from the Rules of Criminal Procedure in regard to a continuing duty to disclose. Unlike Crim.R. 16, Juv.R. 24 contains no requirement that disclosures be updated." *Id.* at ¶ 123. *See also In re D.S.*, 10th Dist. No. 07AP-

479, 07AP-485, 2007-Ohio-6781, ¶ 32 (no requirement that disclosures be updated pursuant to Juv.R. 24.)

{¶9} While Crim.R. 16(A) provides that "[o]nce discovery is initiated by demand of the defendant, all parties have a continuing duty to supplement their disclosures[,]" Juv.R. 24 contains no similar provision. Instead, Juv.R. 24(B) provides that where "a person has failed to comply with an order issued pursuant to [Juv.R. 24]," the court may grant a continuance, prohibit the introduction of the evidence, or enter such other order as it deems just. Accordingly, "a party seeking current information must either repeat its request or move for an order compelling discovery pursuant to Juv.R. 24(B)." *In re A.C.*, 2010-Oho-4933, at ¶ 123. *See also In re Halstead,* 7th Dist. Columbiana No. 04 CO 37, 2005-Ohio-403, ¶ 28 (a juvenile court may impose discovery sanctions only after a party has obtained an order compelling that discovery). Father has not indicated that he repeated his request or that he sought a motion to compel from the trial court. Nor did he request a continuance on this basis. Accordingly, Father has not established that he is entitled to the remedies of Juv.R. 24(B). Father's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE JUVENILE COURT COMMITTED REVERSIBLE ERROR BY ADMITTING INTO EVIDENCE MOTHER'S MUNICIPAL COURT CONVICTIONS OVER OBJECTION FROM FATHER.

{¶10} In addition to challenging the admission of certified copies of Mother's two misdemeanor convictions on the basis of the reason discussed above, Father asserts that the judgment entries of Mother's misdemeanor convictions were inadmissible for two additional reasons: (1) the documents are hearsay and do not fall under the exception of Evid.R. 803(22); and (2) the documents do not comply with the requirements of Crim.R. 32. The trial court

admitted the judgment entries because they were certified copies of conviction records and explained that the convictions were relevant to the court's determination of the adjudication and the placement of the child.

{¶11} This Court recently rejected the argument that certified municipal court documents are inadmissible on hearsay grounds, and instead concluded that certified municipal court documents that are self-authenticating under Evid.R. 902(4) are admissible under Evid.R. 803(8), the public records exception to the hearsay rule. *State v. Davis*, 9th Dist. Summit No. 25680, 2012-Ohio-788, ¶ 17. Accordingly, the judgment entries were admissible as evidence of the fact that judgments of conviction were entered regarding Mother.

{¶12} Father also cites Crim.R. 32 as a basis to exclude the documents, but has failed to explain the reason for his claim. Because Father has failed to argue and explain the matter, this Court will not address this portion of his assignment of error. *See* App.R. 12(A)(2). Father's second assignment of error is overruled.

### ASSIGNMENT OF ERROR III

THE JUVENILE COURT COMMITTED REVERSIBLE ERROR BY ADMITTING INTO EVIDENCE TESTIMONY OF THE CHILD'S COUNSELOR WITHOUT PROPERLY DETERMINING THAT THE CHILD UNDERSTOOD SHE WAS BEING MEDICALLY TREATED AND WITHOUT DETERMINING THE CHILD WAS COMPETENT.

### ASSIGNMENT OF ERROR IV

THE JUVENILE COURT COMMITTED REVERSIBLE ERROR BY QUASHING FATHER'S SUBPOENA TO HAVE THE CHILD TESTIFY THUS PREJUDICING FATHER'S ABILITY TO PRESENT A DEFENSE.

{¶13} Through his third and fourth assignments of error, Father claims that the trial court erred in allowing Susan Deible, a professional clinical counselor, to testify to statements made by R.P. during counseling sessions without first determining that the child understood she

was being medically treated and without determining the child was competent. For the reasons that follow, we conclude that any error on these matters is harmless.

{¶14} Ms. Deibel conducted three counseling sessions with R.P. during the two months immediately prior to the hearing. The child's previous counselor did not testify at the hearing. Notwithstanding any challenged hearsay statements, the undisputed facts established that R.P. had lived with the Atheys for four years. She believed that they were her parents and that their home was hers. That home consisted of not only Mr. and Ms. Athey, but also a half-sibling, the Athey's two children, and, more recently, the child of Mother's new housemate. News that R.P.'s biological father wanted to meet with and perhaps take her into his home was extremely confusing to the child. Ms. Deibel explained that "if, and when, she transitions to another environment, * * * [s]he will be separated from her siblings and the support system and everything she knows to be solid and it will be very difficult. It would be for any child." It would represent "a major upheaval in her life." Ms. Deibel testified that she personally observed anxiety and depressive symptoms in R.P. Her treatment goals for R.P. were to reduce such symptoms and help the child transition into whatever changes in custody might be coming to her. She anticipated family counseling in the future.

{¶15} Ms. Deibel's unchallenged testimony is relevant to the trial court's determination of dependency and was properly considered as such. However, any hearsay statements by R.P. to Ms. Deibel are not necessary or relevant to the trial court's determination that Father abandoned her. Nor are such statements necessary to the determination that the child's current condition warrants the state, in the child's interest, to assume her guardianship. *See* R.C. 2151.04(C). Therefore, it was not necessary to determine the child's competence. The trial court acted within its discretion in determining that it would not require the child to testify in

court at that time, but anticipated an in camera interview before the ultimate disposition. Accordingly, any error in this regard is harmless. Father's third and fourth assignments of error are overruled.

## ASSIGNMENT OF ERROR V

THE JUVENILE COURT COMMITTED REVERSIBLE ERROR BY QUASHING FATHER'S SUBPOENA FOR RECORDS RELATING TO [THE ATHEYS] WHO WERE MADE PARTIES TO THE CASE AND WHOSE HISTORY WAS RELEVANT TO ALLEGATIONS IN THE COMPLAINT.

{¶16} Father asserts that the trial court erred in quashing his subpoena for CSB records regarding the Atheys, which may have demonstrated that a child in their home suffered an injury that may have been caused by abuse and that the child was temporarily removed from their care as a result. The agency responded by claiming that not every parent in a dependency case is entitled to the review of confidential agency records.

{¶17} Father has not demonstrated the relevance of such records to the issue of dependency of R.P. While the records might have born some relevance to the question of the disposition of R.P., the parties stipulated to a disposition of temporary custody to the agency. Consequently, Father's fifth assignment of error is overruled.

## ASSIGNMENT OF ERROR VI

THE JUVENILE COURT COMMITTED REVERSIBLE ERROR BY FINDING THAT FATHER ABANDONED HIS CHILD AS THAT FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## ASSIGNMENT OF ERROR VII

THE JUVENILE COURT COMMITTED REVERSIBLE ERROR BY FINDING THAT THE CHILD WAS DEPENDENT BECAUSE ANY SUCH DEPENDENCY WAS CREATED BY THE ACTIONS OF THE CHILDREN'S SERVICES AGENCY.

{¶18} Father's sixth and seventh assignments of error assert the trial court erred in adjudicating R.P. to be a dependent child. He argues that any dependency was caused by the agency and not by him.

{¶19} The trial court found that R.P. was dependent under R.C. 2151.04(C), which defines a dependent child as one "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship." A finding that a child is dependent under R.C. 2151.04 does not require a specific finding of parental or custodial fault; rather the focus is on the child's condition and whether the child is a victim, regardless of who is responsible. *In re Pitts*, 38 Ohio App.3d 1, 5 (5th Dist.1987). A dependency determination focuses on the child's situation to determine whether the child is without proper or adequate care or support. *In re Stoll*, 165 Ohio App.3d 226, 2006-Ohio-346, ¶ 22 (3rd Dist.).

{¶20} The trial court explained that since Father has come into R.P.'s life after four years, she has become confused, unsettled, and unsure. R.P. had considered the Atheys to be her parents for her entire life. She is very anxious about visiting with Father, let alone of having more of a relationship with a man who was unknown to her until recently. The trial court indicated that the child will need counseling and time in order to adjust to a new reality for her. Father argues that there was no evidence that his conduct was creating an adverse impact upon R.P. However, the fact that Father has entered into R.P's life after such a lengthy absence has necessarily created turmoil in her life.

{¶21} R.C. 2151.011(C) provides that "a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." It is undisputed that Mother visited with R.P. once shortly after her birth and Father had

no contact with R.P. from the time of her birth until 2011. Therefore, under the statute, each parent is presumed to have abandoned R.P.

{¶22} In an effort to overcome the presumption of abandonment, Father blames CSB for not following through and calling the telephone number he left with the hotline receptionist despite the fact that he requested to remain anonymous. CSB contends that the telephone number apparently did not get passed along to the people who might have acted upon it. At the same time, Father also made no effort to follow through. Father knew the mother, was aware of the approximate time and place of R.P.'s birth, suspected that he might be the father of the child, and yet made no further effort to contact, support, or have any sort of a relationship with the child. CSB's misstep aside, its failure to initiate action did not foreclose Father's opportunities for involvement in the life of his child. Under these circumstances, we do not believe CSB's action or lack of action overcomes the presumption of Father's abandonment.

{¶23} Neither of the child's parents had any contact with R.P. over a lengthy period of time. Father has come back into her life at this point and, as a result, the child is experiencing a difficult transition. Even absent any considerations of fault, R.P. is nevertheless in a condition that warrants the state, in the interests of the child, to assume her guardianship. *See* R.C. 2151.04(C). Whatever decisions are made in the future as to her ultimate disposition, the trial judge has correctly assessed that she will need counseling and support, as well as time to adjust to a new reality. Father's sixth and seventh assignments of error are overruled.

## ASSIGNMENT OF ERROR VIII

THE JUVENILE COURT COMMITTED REVERSIBLE ERROR BY GRANTING THE [ATHEY'S] MOTION TO INTERVENE WITH NO PRIOR NOTICE TO FATHER THAT SUCH MOTION WAS GOING TO BE HEARD.

**ASSIGNMENT OF ERROR IX**

THE JUVENILE COURT COMMITTED REVERSIBLE ERROR BY GRANTING THE MOTION FOR THE [ATHEYS] TO INTERVENE AS THEY LEGALLY HAD NOT STOOD IN LOCO PARENTIS BUT RATHER WERE UNDER A VOID COURT ORDER TO CARE FOR THE CHILD.

{¶24} Through the eighth and ninth assignments of error, Father argues that the trial court erred in awarding party status to the Atheys.

{¶25} During pre-trial arguments, the question arose of whether the Atheys were parties to the present action since their earlier status as legal custodians was vacated by a decision of this Court. During the ensuing discussion, the trial court stated: "[T]he fact that their legal status has been vacated by the Court of Appeals does not vacate the fact that for the first five years of this child's life when they had to go to the doctor, when she had to have a decision made as to where she went to school, any decision that was made for the health and well-being of this child was made by the Atheys." On that basis, the trial court concluded that the Atheys had stood in loco parentis and were entitled to party status. Father asserts error in that the Atheys did not file a motion to intervene, as required by Civ.R. 24(C); nor did they do so in a timely fashion, as required by Civ.R. 6(C).

{¶26} Even assuming the trial court erred in granting party status to the Atheys, Father must also demonstrate that the error was prejudicial to his rights. *See In re A.P.,* 9th Dist. Summit No. 23698, 2007-Ohio-5413. ¶ 11, citing *Morris v. Invest. Life Ins. Co.*, 6 Ohio St.2d 185, 190 (1966). *See also In re Goff,* 11th Dist. Portage No. 2003-P-0068, 2003-Ohio-6087, at ¶ 21. "A prejudicial error is defined as one which affects or presumptively affects the final results of the trial." *Miller v. Miller,* 5th Dist. Coshocton No. 06 CA 3, 2006-Ohio-7019, ¶ 12. Father has failed to demonstrate that he was prejudiced by the order granting party status to the Atheys. Father's eighth and ninth assignments of error are overruled.

**ASSIGNMENT OF ERROR X**

THE JUVENILE COURT COMMITTED REVERSIBLE ERROR BY NOT ALLOWING FATHER COPIES OF RECORDS AFTER CHILDREN SERVICES' IN HOUSE COUNSEL ENGAGED IN EX PARTE COMMUNICATION WITH THE COURT.

**{¶27}** Father argues that the trial court abused its discretion when it failed to reconsider its order barring Father's counsel from copying confidential CSB records made available pursuant to a subpoena. The basis of Father's claim is that the trial court relied on an allegedly improper ex parte communication in issuing its original order. Any analysis of this matter must begin with the proposition that CSB records are confidential, and it resolves upon the fact that Father has not proffered any specific authority to suggest that parties should be able to duplicate such records. *See* R.C. 5153.17 (noting the confidentiality of the records of a public children services agency).

**{¶28}** The purportedly improper ex parte communication is a cover letter from a CSB staff attorney under which CSB conveyed the confidential documents to the trial court for purposes of having the court conduct an in camera inspection and permitting subsequent review by Father's attorney. The letter was addressed only to the trial judge. Father's attorney discovered the letter while reviewing the subpoenaed CSB records, and thereupon requested that the trial court reconsider her order that prohibited copying of the records on the basis that the letter was an ex parte communication. In response to Father's objection, the trial judge stated that she issued her initial order without reading the letter from CSB, and she further explained that because CSB records and reports of child abuse or neglect are confidential, it is her practice in the juvenile court to not freely release such records except in permanent custody cases.

**{¶29}** The substance of the letter sets forth the agency's requests regarding the procedural management of confidential records while they are in the custody of the court. In

particular regard to Father's complaint, the letter requests that the court prohibit the requesting party from making copies of the records. The trial court's order did, in fact, prohibit Father's counsel from copying the records.

{¶30} Father's attorney cites Prof.Cond.R. 3.5(a)(3)(i), which prohibits a lawyer from communicating ex parte with a judicial officer "as to the merits of the case * * * unless authorized to do so by law or court order," in support of his argument. Father has not explained how this communication relates to the merits of the case. His attorney argues only that she could "prepare [her] case better" if she could have copied the records. Father has not provided any authority in support of his contention that he should have been permitted to make copies of these records. Nor is there evidence in the record that the trial court relied upon the letter in issuing her order. The fact that the trial judge prohibited Father's counsel from copying confidential CSB records regarding R.P. is not evidence that the judge relied upon a letter from CSB in so doing.

{¶31} Upon consideration, we do not conclude that the trial court abused its discretion in prohibiting Father's counsel from making copies of confidential records. The tenth assignment of error is overruled.

## ASSIGNMENT OF ERROR XI

THE JUVENILE COURT COMMITTED REVERSIBLE ERROR BY NOT PROPERLY ISSUING ITS REASONABLE EFFORTS FINDINGS.

{¶32} Father asserts that although the trial court entered a finding that CSB made reasonable efforts to prevent the continued removal of R.P. from her father, under R.C. 2151.419(B)(1), the trial court erred in failing to articulate the services provided and to explain why those services, if any, failed to enable reunification.

{¶33} This Court recently explained that, in addition to making reasonable effort findings at the hearings listed in R.C. 2151.419(A)(1), including adjudicatory and dispositional hearings, the trial court "shall issue written findings of fact setting forth the reasons supporting its determination." R.C. 2151.419(B)(1). *In re J.G.,* 9th Dist. Summit No. 12CA0037, 2013-Ohio-417, ¶ 31. Specifically, the court must "briefly describe in its findings of fact the relevant services provided by the agency to the family of the child and why those services did not prevent the removal of the child from the child's home or enable the child to return safely home." R.C. 2151.419(B)(1). *See In re J.G.,* at ¶ 31.

{¶34} Upon considered review of the trial court order, we find that it complies with the requirements of R.C. 2151.419. In its order, the court observed that R.P. has visitation with Father and is currently participating in counseling. The court explained that the Atheys have provided R.P. with the only home the child has ever known. She is closely bonded with that family and resides there with an older half-sibling and three other children. Given that context, the court explained that R.P. often opposes visitation with Father and is very anxious about being placed in the custody of a man who is a virtual stranger to her, despite the fact that he is making efforts to build a positive relationship with her. The trial court finally indicated that it will take R.P. some time in counseling to adjust to any transition so as not to be traumatized by the changes. As a result, the court found that while the agency has made reasonable efforts to prevent the continued removal of R.P. from her father, her return to him at this time is contrary to her best interests. We conclude that the trial court has complied with the requirements of R.C. 2151.419(B)(1). Father's eleventh assignment of error is overruled.

III.

{¶35} Father's eleven assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

---

CARLA MOORE
FOR THE COURT

WHITMORE, J.
CONCURS.

BELFANCE, J.
CONCURRING IN JUDGMENT ONLY.

**{¶36}** I concur in the majority's judgment. However, with respect to the bulk of Father's assignments of error, I would overrule them on the basis that, even assuming that there was error, Father failed to explain how, or even allege that, the error prejudiced him. Accordingly, I concur in the judgment.

APPEARANCES:

DENISE E. FERGUSON, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

JOHN P. ALEXANDER, JR., Attorney at Law, for Appellee.

BRIAN ASHTON, Attorney at Law, for Appellee.

T.P., pro se, Appellee.

TONY PAXTON, Guardian Ad Litem.