[Cite as *In re A.S.*, 2020-Ohio-1356.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: A.S.

C.A. No.     29472

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 18-12-1220

DECISION AND JOURNAL ENTRY

Dated: April 8, 2020

CARR, Judge.

{¶1}   Appellant Mother appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that adjudicated the child A.S. a dependent child and placed her in the temporary custody of appellee Summit County Children Services Board ("CSB" or "the agency"). This Court reverses and remands.

I.

{¶2}   Mother is the biological mother of A.S. (d.o.b. 7/3/18).  She is also the biological mother of two older children, C.K. and H.K., who are not subjects of this appeal, but who are nevertheless relevant to issues herein.  Mother's husband ("Father") is the biological father of A.S. but not C.K. and H.K.

{¶3}   In September 2017, CSB filed complaints alleging H.K. was abused, neglected, and dependent; and that C.K. was neglected and dependent.  The parents waived their rights to adjudicatory and dispositional hearing.  H.K. and C.K. were adjudicated dependent based on

stipulated amendments to the complaints and placed in the temporary custody of CSB by agreement of the parties.

{¶4} When A.S. was born, CSB did not seek either removal or protective supervision of that child. Shortly thereafter, CSB moved to return one of the child's half-siblings, H.K., to Mother's temporary custody under an order of protective supervision by the agency. The juvenile court granted that motion and H.K. was returned to Mother's home where A.S. was residing. Although the agency had some ongoing concerns regarding Mother's ability to consistently provide a safe and stable environment for multiple children, it nevertheless moved to maintain H.K. in Mother's home and continue the agency's protective supervision. C.K. remained in the agency's temporary custody. Two months later, however, CSB moved to return H.K. to its temporary custody based on safety concerns in the home and Mother's inability to control H.K.'s behavior. The juvenile court placed H.K. in CSB's temporary custody and ordered that Mother would have supervised visitation with that child.

{¶5} A few weeks later, the agency filed a complaint alleging that A.S. was a neglected and dependent child. CSB obtained an emergency order of temporary custody of A.S. After a hearing before the magistrate, A.S. was adjudicated a dependent child. The allegation of neglect was dismissed for lack of evidence. After a dispositional hearing before the magistrate, A.S. was placed in the temporary custody of CSB. Mother filed timely objections to the adjudicatory and dispositional orders. The juvenile court overruled Mother's objections, adjudicated the child dependent, and placed A.S. in the agency's temporary custody. Mother timely appealed and raises two assignments of error for review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED BY ADJUDICATING THE MINOR CHILD A.S. AS A DEPENDENT CHILD.

{¶6} Mother argues that the juvenile court's adjudication of A.S. as a dependent child was against the manifest weight of the evidence. This Court agrees.

{¶7} Juvenile abuse, neglect, and dependency cases are initiated by the filing of a complaint. *See* Juv.R. 22(A); Juv.R. 10; R.C. 2151.27(A). The complaint is "the legal document that sets forth the allegations that form the basis for juvenile court jurisdiction." Juv.R. 2(F). The juvenile court must base its adjudication on the evidence adduced at the adjudicatory hearing to support the allegations in the complaint. *See In re Hunt*, 46 Ohio St.2d 378, 380 (1976). If allegations in the complaint are not proved by clear and convincing evidence at the adjudicatory hearing, the juvenile court must dismiss the complaint. Juv.R. 29(F); R.C. 2151.35(A)(1). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶8} This Court reviews as follows:

In determining whether the juvenile court's adjudication of dependency is against the manifest weight of the evidence, this court [reviews] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [adjudication] must be reversed[.]

(Alterations sic.) *In re R.L.*, 9th Dist. Summit No. 28387, 2017-Ohio-4271, ¶ 8, quoting *In re C.S.*, 9th Dist. Summit No. 26178, 2012-Ohio-2884, ¶ 5, quoting *In re A.W.*, 195 Ohio App.3d 379, 2011-Ohio-4490, ¶ 8 (9th Dist.).

{¶9} Mother challenges the finding that A.S. is a dependent child as alleged in the complaint. CSB alleged that A.S. is dependent pursuant to R.C. 2151.04(C) and/or (D).

R.C. 2151.04(C)

{¶10} Pursuant to R.C. 2151.04(C), a dependent child is one "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]" In addition,

> [a] dependency finding under R.C. 2151.04(C) does not require specific parental fault; rather the focus is on the child's situation to determine whether the child is without proper or adequate care or support. *In re R.P.*, 9th Dist. Summit No. 26836, 2013-Ohio-5728, ¶ 19. "The conduct of the parent is relevant only insofar as it forms a part of the child[ ]'s environment and it is significant only if it has a detrimental impact on [him]." *In re A.C.* at ¶ 14, citing *In re Burrell*, 58 Ohio St.2d 37, 39 (1979).

*In re I.T.*, 9th Dist. Summit Nos. 27513, 27560, and 27581, 2016-Ohio-555, ¶ 32.

{¶11} CSB alleged that the child's environment warranted the agency's intervention and guardianship because H.K. poses a risk of physical harm to A.S., Mother has cognitive delays that limit her ability to care for the child, the parents are in jeopardy of losing their housing, Mother relies on Father to make decisions regarding the care of the child, and the parents were not cooperative with CSB in participating in case plan objectives. The juvenile court premised its finding of dependency under this subsection in large part on evidence that Mother's two Fast Track counselors were concerned that Mother was overwhelmed with three young children in the home and that the parents might not implement the necessary parenting strategies to keep A.S. safe from injury by H.K. The trial court found that Mother failed to demonstrate that she was able to limit

the safety risks to A.S. that were associated with having H.K. in the home without professional assistance.[1] The juvenile court also found that, because of Father's control, Mother was unable to make decisions regarding the care of A.S. Finally, the juvenile court noted Mother's and Father's "strange parental roles" based on the spouses' division of parenting responsibilities in the home.

{¶12} To the extent that CSB relied on and the juvenile court considered Mother's and Father's noncompliance with proposed case objectives in finding the child dependent, this Court notes that there was no case plan in effect regarding A.S. at the time of the adjudicatory hearing. As no case plan had been adopted and made the order of the court, Mother and Father were under no obligation to comply with proposed objectives, sign releases, or cooperate with the agency. *In re S.D.-M.*, 9th Dist. Summit Nos. 27148 and 27149, 2014-Ohio-1501, ¶ 26, citing R.C. 2151.412(E) and (F)(1). Accordingly, any finding of dependency based on the parents' noncompliance with the agency's proposed case plan was error.

{¶13} At the adjudicatory hearing, CSB presented the testimony of two Fast Track counselors who began providing in-home services to the family shortly before A.S. was born. Both counselors believed that H.K. might accidentally injure A.S. during his active play. Nevertheless, when H.K. was observed to interact directly with A.S., he was very affectionate with his sister. Although one counselor remarked that Mother's focus was split when dealing with the two children, the counselor acknowledged that any parent would need to prioritize when caring for a toddler and an infant. For example, when H.K. went into a bedroom closet and

---

[1] The juvenile court's finding regarding Mother's failure of proof was likely a result of inartful drafting. Nevertheless, because the agency maintained the burden of proving dependency by clear and convincing evidence, to the extent that the trial court may have improperly shifted the burden, such a finding of dependency would be error.

began climbing up the cupboards, Mother did not leave A.S. unattended, but continued changing the infant's diaper and called for H.K. to return. The counselor admitted that Mother could not have left the infant unattended at that time, particularly as the counselor was present and able to retrieve H.K.

{¶14} All of CSB's witnesses admitted that H.K. had never injured A.S. They merely opined that there was a possibility that the active three-year old could accidentally harm A.S. as he played. In fact, the only time that any child was injured during this case was when H.K. was being supervised by CSB workers after H.K.'s father left the visitation center and before Mother arrived to pick up the child.[2] H.K. suffered a fall requiring stitches to his head.

{¶15} The Fast Track counselors saw both parents redirect H.K. in an appropriate manner, although the counselors on occasion directed Mother in that regard. In any event, because H.K. was no longer residing in Mother's and Father's home and agency efforts to transition him back into the home had ceased, any risk he may have posed to A.S. no longer existed.

{¶16} Mother and Father were always observed to act in an appropriate and caring manner with A.S., both in the home and during visits at the agency center. The parents' home, while small, was deemed by the counselors and CSB caseworker to be appropriate. There were no pending eviction proceedings, as Mother and Father had resolved prior proceedings to the satisfaction of their landlord. CSB presented no evidence that Mother and Father were currently at any risk of losing their home.

{¶17} Father works two jobs and is out of the home for a significant period each week, leaving Mother alone to parent A.S. The caseworker and counselors were concerned that Mother

---

[2] Mother had a restraining order against H.K.'s father based on acts of domestic violence he perpetrated against her. Accordingly, Mother waited to retrieve H.K. from the visitation center until she was assured that the child's father had left the premises.

was unable to make any decisions regarding the care of the child and that she believed that she had to seek authority from Father to act. There was no evidence of any incidents where A.S. was harmed, neglected, or failed to receive medical treatment because Mother believed that she could not make decisions without Father's consent. To the contrary, Father testified that Mother does not need his approval to act and that Mother has in fact made medical decisions regarding the child without his input. A.S.'s medical records indicate that the child was current on all immunizations and check ups while in the parents' custody.

{¶18} Finally, to the extent that CSB alleged that Mother was unable to provide appropriate care for A.S. because Mother suffered from cognitive delays, the agency put forth no evidence to support that. The caseworker and Fast Track counselors believed that Mother might have some cognitive deficits because she asked a lot of questions. However, there was no evidence of any assessment of Mother's cognitive functioning or that any witness at the hearing was qualified to render a diagnosis in that regard.

{¶19} Based on a review of the evidence, this is the exceptional case where the finder of fact clearly lost its way and created a manifest miscarriage of justice by adjudicating A.S. a dependent child pursuant to R.C. 2151.04(C). Despite the agency's concerns that A.S. might be at risk of harm in Mother's and Father's home, the child never suffered any injury or neglect while in their care. While this Court acknowledges that a child need not remain in an unsafe environment until he suffers actual harm, there must be clear and convincing evidence that the child is reasonably at risk for harm to support an adjudication of dependency. By all accounts in this case, the parents' home was appropriate, and Mother and Father interacted with A.S. in a caring and appropriate manner. Even assuming that H.K., a very active yet not aggressive three-year old

child, might accidentally harm the infant A.S. during play, H.K. was no longer in the parents' home. Moreover, the agency was no longer making efforts to transition H.K. back into the home.

{¶20} Mother and Father had divided familial tasks in a manner that suited their circumstances. There was no evidence that they had assumed "strange parental roles[.]" Although Mother sought Father's advice regarding significant decisions regarding A.S., there was no evidence that the child did not receive adequate care while with Mother. Father testified in Mother's presence that Mother had authority to act regarding the child without his permission or input.

{¶21} Based on the above discussion, this Court concludes that the juvenile court's finding that A.S. is a dependent child pursuant to R.C. 2151.04(C) is against the manifest weight of the evidence.

R.C. 2151.04(D)

{¶22} To prove that a child is dependent pursuant to R.C. 2151.04(D), the agency must prove both that:

> (1) The child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child.
>
> (2) Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household.

{¶23} There is no dispute that CSB satisfied the first prong of the test. H.K. and C.K., siblings of A.S., were previously adjudicated dependent children. The second prong of the test requires consideration of not only the circumstances surrounding the siblings' adjudications, but

also the present conditions in the subject child's household. The agency must prove that those circumstances combine to place the subject child in danger of either abuse or neglect.

{¶24} In this case, the juvenile court premised its finding of dependency pursuant to R.C. 2151.04(D) solely on evidence that A.S.'s siblings had prior dependency adjudications. While this satisfied the requirements of R.C. 2151.04(D)(1), the trial court cited no evidence and made no finding regarding the requirements of R.C. 2151.04(D)(2). As the agency must satisfy both prongs of the test, the juvenile court's finding of dependency cannot stand merely on the basis of the siblings' prior adjudications. Because this Court is a reviewing court, we decline to assume the role of the trial court to determine in the first instance whether CSB met its burden of proof to establish dependency in consideration of both prongs of R.C. 2151.04(D). *See Brinson v. City of Akron Housing Appeals Bd.*, 9th Dist. Summit No. 28405, 2017-Ohio-7687, ¶ 7.

Conclusion

{¶25} The juvenile court's finding that A.S. was a dependent child pursuant to R.C. 2151.04(C) is against the manifest weight of the evidence. This Court declines to make any factual findings in the first instance regarding R.C. 2151.04(D)(2). Accordingly, we are compelled to remand the matter to the juvenile court for a full consideration of whether A.S. is a dependent child pursuant to R.C. 2151.04(D)(1) and (2). Mother's first assignment of error is sustained.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT ERRED IN FINDING IT WAS IN THE BEST INTEREST OF THE MINOR CHILD A.S. THAT SHE BE PLACED IN THE TEMPORARY CUSTODY OF [CSB], AS THE DISPOSITION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶26} Mother argues that the juvenile court's finding that an order of temporary custody of A.S. to CSB was against the manifest weight of the evidence. Based on this Court's resolution

of the first assignment of error, Mother's second assignment of error has been rendered moot and we decline to address it. *See* App.R. 12(A)(1)(c).

### III.

{¶27} Mother's first assignment of error is sustained. This Court declines to address the second assignment of error. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is reversed and the cause remanded for further proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
DONNA J. CARR
FOR THE COURT

CALLAHAN, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

ALAN M. MEDVICK, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.