[Cite as *In re T.H.*, 2025-Ohio-5086.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | | |

IN RE: T.H.

C.A. No.　　24AP0033


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.　　2024 JUV-C 000616

DECISION AND JOURNAL ENTRY

Dated: November 10, 2025

---

SUTTON, Judge.

{¶1}　Appellant, L.H. ("Mother"), appeals from a judgment of the Wayne County Court of Common Pleas, Juvenile Division, that adjudicated her minor child dependent and placed the child in the temporary custody of Wayne County Children Services Board ("CSB"). This Court affirms.

I.

{¶2}　Mother is the biological mother of T.H., born June 8, 2024. Mother has several older children who are not parties to this appeal but the juvenile cases pertaining to them are directly relevant to the adjudication of T.H. The father of T.H. ("Father") did not file a brief in this appeal.

{¶3}　The ongoing caseworker assigned to the parents' cases with the older children testified at the shelter care and adjudicatory hearings in this case about the basic facts of those cases. CSB became involved with Mother, Father, and their children during June 2023, shortly

after the birth of their then youngest child, Ter.H. That child was removed from the parents' custody because he tested positive at birth for the presence of methamphetamine and amphetamine. The cases of Ter.H. and the older children also involved allegations of domestic violence perpetrated by Father against Mother, both parents' ongoing substance abuse problems and undiagnosed mental illness, and their inability to otherwise meet the basic needs of the children.

{¶4} The juvenile court later adjudicated Ter.H. and the other children dependent, placed them in the temporary custody of CSB, and adopted the case plan. The court-ordered case plan required Mother and Father to obtain substance abuse and mental health assessments and follow all recommendations, submit to regular drug testing, sign releases of information with service providers, and regularly visit the children. During the following year, both parents failed to cooperate with CSB or consistently engage in case plan services.

{¶5} Mother purportedly engaged in some case plan services, but she refused to sign information releases with most services providers, so CSB was unable to monitor her case plan compliance. Mother engaged in some therapy but her therapist informed CSB that Mother was not attending counseling regularly or following the therapist's recommendations. Mother was uncooperative and argumentative with the original caseworker assigned to the cases of her older children. After Mother threatened to cause physical harm to that caseworker, CSB assigned a new caseworker to Mother's case and, for the protection of the caseworker, did not permit her to go to Mother's home alone. Mother was required to come to the agency to meet monthly with the caseworker but did not do so. Over time, Mother stopped meeting or communicating with the caseworker.

{¶6} Mother reported that she had obtained a substance abuse assessment but, because she would not sign an information release, CSB knew nothing about that assessment or what it

recommended for Mother. Mother submitted to drug screening only three times during the first few months of the case, and tested positive for methamphetamine and amphetamine each time. After those positive drug screens, Mother did not submit to drug testing with CSB for the next nine months. She also failed to maintain regular contact with CSB or visit her children.

{¶7} During March 2024, CSB received information that Mother was pregnant with another child. CSB believed that Mother had moved to Richland County and was living with Father, but Mother would not provide the agency with her address. Consequently, CSB did not know where or with whom Mother was living and had not been able to assess whether her home environment was appropriate.

{¶8} At a semiannual review hearing on June 17, CSB learned that Mother had given birth to T.H., the child at issue in this appeal. At the time T.H. was born, Mother had been noncompliant with almost all aspects of the case plan. Moreover, CSB was concerned because Mother had not submitted to drug testing throughout most of her pregnancy, tested positive for marijuana near the end of her pregnancy, was not involved in case plan services to address her ongoing substance abuse problem, and stopped submitting oral swabs to CSB for drug screening after T.H. was born.

{¶9} On June 25, 2024, CSB filed a complaint, alleging that T.H. was a dependent child based on the parents' ongoing history with CSB involving their older children and their failure to work on the reunification goals of the court-ordered case plan. Mother had stopped submitting drug screens more than one month earlier and had not engaged in any court-ordered counseling or drug treatment for more than two months. Moreover, CSB did not know where she was living and had been unable to assess the safety of her home environment. Following a shelter care hearing, the trial court placed T.H. in the emergency temporary custody of CSB.

{¶10} The trial court later held an adjudicatory hearing. CSB presented the testimony of the current caseworker from the parents' cases involving the older children as well as Mother's drug screen results from Forensic Fluids Laboratories. During the hearing, CSB requested that the trial court take judicial notice of the court records from the older siblings' cases. After a discussion on the record, the trial court informed the agency that it would not take judicial notice of the records from other cases but would allow CSB to submit certified records from those cases. CSB did not seek to admit certified records from the other cases but relied on the other evidence that it presented in this case.

{¶11} Following the hearing, the trial court adjudicated T.H. a dependent child under R.C. 2151.04(C). After a dispositional hearing, it placed T.H. in the temporary custody of CSB. Mother appeals and raises one assignment of error.

I.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT COMMITTED A REVERSIBLE ERROR IN FINDING THAT T.H. WAS A DEPENDENT CHILD UNDER R.C. 2151.04(C) [AS THAT FINDING] WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE[.]

{¶12} Mother's assignment of error is that the trial court's dependency adjudication was not supported by sufficient evidence. This Court's review under the sufficiency of the evidence standard requires us to "examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *In re Z.C.*, 2023-Ohio-4703, ¶ 12. CSB was required to establish its allegations of dependency by clear and convincing evidence. *In re H.P.*, 2022-Ohio-778, ¶ 28, (9th Dist.), citing *In re I.K.-W.*, 2019-Ohio-2807, ¶ 17 (9th Dist.); R.C. 2151.35(A)(1); and Juv.R. 29(E)(4). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."

*In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶13} The trial court adjudicated T.H. dependent under R.C. 2151.04(C), which defines a dependent child as one "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]  A dependency finding under R.C. 2151.04(C) does not require a demonstration of parental fault.  Instead, "the focus is on the child's situation to determine whether the child is without proper or adequate care or support." *In re A.S.*, 2020-Ohio-1356, ¶ 10 (9th Dist.), quoting *In re I.T.*, 2016-Ohio-555, ¶ 32 (9th Dist.).  A lack of proper care is often demonstrated through "evidence of conditions or environmental elements that were adverse to the normal development of the child[]." *In re A.C.*, 2004-Ohio-3248, ¶ 14 (9th Dist.), citing *In re Burrell*, 58 Ohio St.2d 37, 39 (1979).

{¶14} Mother incorrectly argues that the trial court erred by taking judicial notice of the records from the juvenile cases involving Mother's other children.  As set forth already, the trial court did not take judicial notice of those other cases but instead properly limited its consideration to the evidence presented in this case. *See In re J.C.*, 2010-Ohio-637, ¶ 14-15 (9th Dist.).

{¶15} Mother's primary challenge to the sufficiency of the evidence is that the trial court "relied solely on the parents' lack of cooperation" with CSB and the mere "existence" of open cases involving the child's siblings.  She is correct that, prior to the adjudication of a child, a parent typically has no legal obligation to work with a children services agency or engage in services that the agency recommends.  In this case, however, both parents were already parties to ongoing cases involving one or more of T.H.'s older siblings.  At the time CSB filed its complaint alleging dependency of T.H., both parents were legally bound by the court-ordered case plan in the siblings' cases to work toward reunification with those children. *See* R.C. 2151.412(F)(1).

{¶16} In this case, T.H. was removed from Mother's custody as a newborn infant. Although T.H. did not test positive for drugs at birth, as Ter.H. had, the trial court was not required to ignore Mother's history of serious parenting problems and her failure to comply with court-ordered services in the ongoing cases of her older children. "Ohio courts have held that newborn infants can be dependent before they have ever been released into their parents' custody." *In re D.B.*, 2003-Ohio-4526, ¶ 17 (9th Dist.), quoting *In re Pieper Children*, 85 Ohio App.3d 318, 325 (12th Dist. 1993). The juvenile court should not experiment with the safety and security of a newborn baby where the agency can establish that the child's prospective home environment poses a threat to the child's wellbeing. *Id.* A prospective finding of dependency is often established with evidence of the parents' history of juvenile cases or their inability to provide a suitable home for other children. *See id.*; *In re D.W.*, 2022-Ohio-66, ¶ 18, 25 (9th Dist.).

{¶17} A parent's failure to comply with the requirements of a court-ordered case plan in the cases of a child's older siblings is directly relevant to whether the condition of the parent's home environment warranted state intervention under R.C. 2151.04(C). *See In re I.T.*, 2016-Ohio-555, at ¶ 12 (9th Dist.); *In re D.W.*, at ¶ 18, 25 (9th Dist.). That is particularly true here because the cases were still open and the older children remained in CSB's custody at the time of T.H.'s birth.

{¶18} In the ongoing cases of the older children, CSB had been required to prove by clear and convincing evidence that Mother's ongoing drug problems and other dangers in her home supported the adjudication of her older children as dependent. Those unchallenged adjudications conclusively established the dependency of those children and justified CSB's ongoing involvement with this family. *See In re E.R.*, 2025-Ohio-4546, ¶ 8 (9th Dist.).

{¶19} For almost one year prior to the birth of T.H., Mother had failed to even minimally comply with the court-ordered reunification requirements in the older children's cases. She had not engaged in services, submitted to regular drug testing, and did not regularly visit her children. Mother's unsuitability was established by virtue of those adjudications and CSB presented undisputed evidence that Mother had failed to make progress toward remedying any of the concerns about those children's home environment that resulted in their dependency adjudications and the ongoing removal of those children from Mother's custody.

{¶20} The Forensic Fluids exhibit about Mother's drug tests is somewhat confusing because it does not present the drug test results in chronological order and mixes test results from 2023, with those from 2024. Nevertheless, it fully supports the caseworker's testimony that Mother had not complied with the case plan requirement that she submit to weekly drug testing with CSB. In fact, she submitted only nine oral swabs to CSB over a 14-month period. Moreover, when Mother submitted samples, she tested positive for methamphetamine, amphetamine, and/or THC.

{¶21} At the time T.H. was born, the evidence was undisputed that both Mother and Father were refusing to work toward reunification with their other children and had not begun to resolve any of their parenting problems. Despite being parties to a court-ordered case plan for nearly one year, the parents had failed to make even minimal progress. This evidence was sufficient to establish the dependency of T.H. Mother's assignment of error is overruled.

III.

{¶22} Mother's assignment of error is overruled. The judgment of the Wayne County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

FLAGG LANZINGER, P. J.
STEVENSON, J.
CONCUR.

APPEARANCES:

YU MI KIM-REYNOLDS, Attorney at Law, for Appellant.

ANGELA WYPASEK, Prosecuting Attorney, and ALEXANDER MONTVILAS, Assistant Prosecuting Attorney, for Appellee.