[Cite as *In re M.P.*, 2026-Ohio-1746.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: M.P.
    T.P.

C.A. Nos.   31679
             31680

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.   DN 25 05 0275
             DN 25 05 0276

DECISION AND JOURNAL ENTRY

Dated: May 13, 2026

FLAGG LANZINGER, Presiding Judge.

{¶1}    Appellant, M.H. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that adjudicated her minor children dependent and placed them in the temporary custody of Summit County Children Services Board ("CSB"). This Court reverses and remands.

I.

{¶2}    Mother is the biological mother of M.P., born August 14, 2020; and T.P., born February 3, 2019. The children's father ("Father") did not appeal from the trial court's judgment.

{¶3}    On May 22, 2025, CSB filed complaints to allege that M.P. and T.P. were dependent children. According to the complaints, the children were living with the maternal grandmother ("Grandmother") because Mother had no stable home, but Grandmother's home was

cluttered, dirty, and infested with bed bugs and cockroaches that would crawl on and bite the children. The complaint also alleged that Mother had a substance abuse problem.

{¶4} Mother and Grandmother had not voluntarily allowed the agency to inspect their homes or speak to the children. Consequently, when it filed the complaints, CSB also sought and obtained an order that required Mother and Grandmother to allow the agency reasonable access to assess Grandmother's home (where the children were living) and to interview the children. It is unknown from the record whether CSB gained access to the children or the home prior to adjudication, but it did not amend its complaints to reflect any additional concerns.

{¶5} The matter proceeded to an adjudicatory hearing before a magistrate. At the hearing, the focus of the evidence was on the condition of Grandmother's apartment. CSB presented the testimony of only two witnesses: the landlord of Grandmother's apartment, who had seen the apartment approximately seven weeks before the complaint was filed; and the intake caseworker, who had not seen the inside of the apartment. The landlord testified that, because the first-floor tenant had cockroaches, he came to see Grandmother's second-floor apartment. He did not describe the condition of Grandmother's apartment in much detail except that he saw dirt and clutter and that he saw an unspecified number of cockroaches in Grandmother's kitchen.

{¶6} The landlord further testified that Grandmother had lived in the apartment for approximately 20 years and had never had roaches before. He explained that the apartment would need to be cleaned of all dirt and clutter and the kitchen cabinets would need to be emptied before he could have it exterminated. He asked Grandmother to notify him when the necessary cleaning had been done, but she never did. Although the landlord testified about speaking to Grandmother several times after his April 2025 visit, it is unclear from his testimony whether he ever returned to see the inside of apartment. Instead, because Grandmother had not notified him that she had

cleaned the apartment, he apparently assumed that she had not, and he initiated eviction proceedings at some point before the adjudicatory hearing.

{¶7} After the adjudicatory hearing, the magistrate filed a decision that adjudicated the children dependent under R.C. 2151.04(C), without specific factual findings. Upon timely request from Mother for findings of fact and conclusions of law, the magistrate ordered the parties to submit proposed findings and conclusions. Both parties submitted proposed findings and the magistrate adopted those submitted by CSB.

{¶8} Mother filed objections to the magistrate's decision. Her objections included that the adjudications were not supported by the evidence and that the magistrate had failed to support the dependency adjudications with detailed findings as required by R.C. 2151.28(L). The trial court later overruled Mother's objections and independently entered a judgment that adjudicated the children dependent. The trial court set forth factual findings to support its adjudication, which explicitly focused on the condition of Grandmother's apartment. Mother appeals and raises four assignments of error. This Court will address her first two assignments of error together because they are dispositive.

II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT'S FINDING OF DEPENDENCY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND VIOLATED MOTHER'S RIGHTS TO DUE PROCESS IN MAKING A FINDING OF DEPENDENCY AS IT FAILED TO COMPLY WITH R.C. 2151.28(L).

{¶9} Through her first and second assignments of error, Mother asserts that the trial court's adjudication of her children as dependent was against the manifest weight of the evidence

and was not supported by sufficient factual findings, as required by R.C. 2151.28(L). Because these arguments are intertwined, this Court addresses them together.

{¶10} Because the trial court adjudicated M.P. and T.P. as dependent children, R.C. 2151.28(L) required it to explain its adjudication through "written findings of fact and conclusions of law" and to "enter those findings of fact and conclusions of law in the record of the case." The findings of fact and conclusions of law must include "specific findings as to the existence of any danger to the child and any underlying family problems that are the basis for the court's determination that the child is a dependent child." *Id*.

{¶11} Mother correctly asserts that the trial court did not explicitly rule on this aspect of her objections to the magistrate's decision. In its judgment overruling Mother's objections and independently adjudicating the children, however, the trial court did articulate factual findings and legal conclusions to explain its adjudication of M.P. and T.P. as dependent under R.C. 2151.04(C). On their face, these factual findings and legal conclusions appear to satisfy the requirement of R.C. 2151.28(L) that the trial court specify the existence of a danger to the children that forms the basis of the dependency adjudications.

{¶12} Nevertheless, inherent in the statutory requirement that the trial court make factual findings to explain its dependency adjudications is that those findings of "fact" be supported by evidence of those facts that was presented at the hearing. Moreover, Mother has asserted through her first assignment of error that the trial court's dependency adjudications are against the weight of the evidence. Construing these arguments together, this Court must conclude that the trial court committed reversible error by supporting its adjudications with factual findings that are not supported by any evidence presented at the adjudicatory hearing.

{¶13}   The trial court adjudicated M.P. and T.P. dependent under R.C. 2151.04(C), which defines a dependent child as one "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]"  Although the complaint included allegations that Mother had a drinking problem, the trial court found that Mother had made arrangements for the children to stay with Grandmother, and focused its dependency adjudications on the condition of Grandmother's apartment.  The trial court also focused on the post-complaint fact that the landlord had initiated eviction proceedings against Grandmother, but this Court will not address the relevance of that finding in this adjudication appeal.

{¶14}   Of significance here, the trial court supported the dependency adjudications with findings of fact about the condition of Grandmother's home that were not supported by the evidence presented at the hearing.  Specifically, the trial court agreed with CSB's position that "the record reflects persistent insect infestation, structural hazards, and months of unresolved clutter" that demonstrated that the "children's environment was unsafe and adverse to their normal development."  This Court will separately address each of these factual findings along with related findings that are not supported by the evidence in the record.

**Persistent Insect infestation**

{¶15}   Although CSB had alleged that Grandmother's apartment had cockroaches and bedbugs, no evidence about bedbugs was presented at the hearing.  The only evidence about cockroaches came through the testimony of Grandmother's landlord, who had been inside Grandmother's apartment approximately seven weeks before CSB filed its complaint.  The trial court repeatedly found in its judgment that the landlord had seen cockroaches "throughout [Grandmother's] home[,]" but no such testimony was offered at the hearing.  The landlord testified that, when he visited Grandmother's apartment during early April 2025, he went inside the living

room, kitchen, and bathroom. CSB asked him where he saw cockroaches and he answered, "[i]n the kitchen." He did not mention seeing cockroaches in any other room. The landlord also did not specify an approximate number of cockroaches, nor did he indicate that he saw them anywhere near open food or the children.

{¶16} Additionally, the trial court explicitly found that the cockroach "infestation" in Grandmother's apartment had been "a months-long" and "persistent" issue and that the roaches had spread from Grandmother's second-floor apartment to the apartment downstairs. There was no evidence to support those findings, however. The landlord testified that Grandmother had lived in the apartment for approximately 20 years and had never had cockroaches before. He explained that the downstairs tenant notified him about roaches in the downstairs apartment and that the landlord arranged to have the downstairs apartment exterminated. From that evidence, the trial court concluded, with no supporting evidence, that the cockroaches had first infested Grandmother's upstairs apartment and had been there for so long that they had spread to the downstairs apartment.

{¶17} Moreover, the landlord testified about seeing cockroaches in Grandmother's apartment only once, in April 2025. The was no evidence to support any conclusion about how long roaches had been in Grandmother's kitchen at that time or whether they were still there seven weeks later when CSB filed its complaint. The landlord testified that he had spoken to Grandmother several times. Grandmother apparently told him that she had done some cleaning but did not notify him that the apartment was ready to be exterminated. The landlord apparently did not believe the apartment was clean, so he did not have it exterminated. He failed to testify about seeing the apartment after April 2025 to indicate whether the roaches had spread and/or whether there were still cockroaches in Grandmother's apartment.

**Structural Hazards**

{¶18}   The only evidence about a structural hazard in Grandmother's apartment was the landlord's testimony that, when he was in Grandmother's apartment during December 2024, he observed a missing grate on a wall heating duct.  He testified that he noticed the missing grate and came back shortly afterward to install a new grate over the open hole.  There was no evidence that the children were residing with Grandmother at that time and, even if they were, that one structural hazard was repaired months before CSB filed its complaints pertaining to these children.

**Months of Unresolved Clutter**

{¶19}   The trial court's factual finding about months of clutter is also not supported by the record.  Again, the landlord testified about the condition of Grandmother's apartment when he was inside the apartment during April 2025.  He testified that the apartment was dusty and dirty and that there were stacked boxes and toys and other items scattered about.  Although he testified that he viewed the clutter as a safety threat, he did not explain why, except that there were items on the stairs.  The landlord did not testify that passage through the apartment was blocked, nor did he testify about any odor, unsanitary conditions, or how the clutter would pose a threat to the safety or welfare of these children.  As explained pertaining to the "persistent" insect infestation, the landlord testified only about his observations in April 2025, seven weeks before the complaint was filed.  He spoke to Grandmother about her need to clean the apartment, but he did not testify about returning to the apartment to observe its condition inside.

{¶20}   Finally, the trial court repeatedly emphasized that Grandmother had not allowed CSB into her home to inspect its condition before CSB filed its complaints and the trial court issued an order of access in this case.  Although those factual findings *were* supported by the evidence, they were not relevant to the dependency adjudication and could not be held against

Grandmother. Before CSB filed its complaint and the trial court issued an order of access, Grandmother was under no legal obligation to allow CSB to have access to her home. This Court has repeatedly emphasized that, before a parent or relative is obligated by a court-ordered case plan, order of access, or some other court order, they have no legal obligation to cooperate with CSB and the trial court cannot fault them for failing to do so. *See*, *e.g.*, *In re T.H.*, 2025-Ohio-5086, ¶ 15 (9th Dist.); *In re G.G.*, 2022-Ohio-1654, ¶ 21 (9th Dist.); *In re A.S.*, 2020-Ohio-1356, ¶ 12 (9th Dist.).

{¶21} Because the trial court supported the dependency adjudications with unfounded factual findings and legal conclusions, this Court must reverse the adjudications of dependency. As explained above, Mother's first and second assignments of error are sustained on that basis.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FINDING THAT [CSB] MADE REASONABLE EFFORTS AT THE ADJUDICATORY HEARING.

### ASSIGNMENT OF ERROR IV

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FINDING IN ITS ADJUDICATORY DECISION THAT [CSB] WAS NOT REQUIRED TO COMPLY WITH THE KINSHIP CAREGIVER ACT.

{¶22} Mother's remaining assignments of error have been rendered moot by this Court's resolution of her first and second assignments of error and will not be addressed. *See* App.R. 12(A)(1)(c).

III.

{¶23} Mother's first and second assignments of error are sustained to the extent explained above. The remaining assignments of error are moot and were not addressed. The judgment of

the Summit County Court of Common Pleas, Juvenile Division, is reversed and remanded for proceedings consistent with this opinion.

Judgment reversed and<br>cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.


JILL FLAGG LANZINGER
FOR THE COURT


SUTTON, J.
CONCURS IN JUDGMENT ONLY.

STEVENSON, J.
DISSENTING.

{¶24} I respectfully dissent because I do not agree with the majority that the trial court's factual findings were not supported by evidence presented at the adjudicatory hearing. It is fundamental that, "[w]hen reviewing the evidence presented, it is within the province of the fact-finder to draw reasonable inferences from the evidence." *State v. Roberts*, 2025-Ohio-5120, ¶ 140. There was evidence presented at the adjudicatory hearing from which the trial court could infer that there was a cockroach infestation in Grandmother's building, that the problem remained unresolved for several months, and that Grandmother failed to cooperate with her landlord to rectify the problem.

{¶25} The landlord explicitly testified about seeing cockroaches in Grandmother's kitchen, but he also testified that there were cockroaches throughout the downstairs apartment and that, even after the downstairs apartment was exterminated, the problem remained. Although the landlord did not testify that he had been back inside Grandmother's apartment after his April 2025 visit, he did testify about having ongoing contact with Grandmother about her need to clean the apartment before he could send an exterminator to treat the apartment for cockroaches. He continued to contact Grandmother over a period of four to five months, but she never informed him that she had sufficiently cleaned the apartment. Although Grandmother had lived in the apartment for approximately twenty years, the landlord posted a thirty-day notice to start eviction proceedings because he needed to exterminate the apartment and apparently felt he had no other option. From that testimony, the trial court reasonably inferred that Grandmother had not adequately cleaned the apartment and that the clutter and cockroach infestation persisted for several months.

{¶26} The caseworker testified that, based on her ongoing training as a CSB intake caseworker, homes infested with bugs are unsafe for children of the young ages of M.P. and T.P. because of their vulnerability and tendency to crawl around and play on the floor. This evidence supported the trial court's finding that there was a cockroach infestation in Grandmother's building that posed a threat to the wellbeing of the children.

{¶27} I also believe that the weight of this evidence supported the trial court's adjudication of dependency and agree with the trial court's findings that CSB had made reasonable reunification efforts and that the Kinship Caregiver Act did not apply at the adjudicatory stage of the proceedings. Therefore, I would overrule all of Mother's assignments of error and affirm the judgment of the trial court.

APPEARANCES:

NEIL P. AGARWAL, Attorney at Law, for Appellant.

MARK SWEENEY, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and ASHLEE JAMES, Assistant Prosecuting Attorney, for Appellee.

JAMIE BLAIR, Guardian ad Litem.